**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DOROTHY A. MONCUR** | |
| **Plaintiff,** | **Civil Action No. 17-4811 (ES)** |
| **v.** | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Dorothy A. Moncur's ("Plaintiff") appeal of Administrative Law Judge ("ALJ") Leah Farrell's ("ALJ Farrell") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons below, the Court AFFIRMS the Commissioner's decision.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Because the Court writes primarily for the benefit of the parties, only the essential facts are recounted here. On November 15, 2013, Plaintiff filed a claim for DIB alleging disability beginning May 2, 2000, due to osteoarthritis, fibromyalgia, sciatica, ADHD, and dyslexia. (D.E. No. 5, Administrative Record ("R.") at 174-175 & 190). The claims were initially denied on January 27, 2014, and then denied upon reconsideration on April 28, 2014. (*Id.* at 114-118 & 122-24). Plaintiff requested a hearing before an ALJ, which was held on December 7, 2015. (*Id.* at 29-88). ALJ Farrell issued a decision on January 14, 2016, denying DIB on the grounds that, as

of the date last insured ("DLI"), December 31, 2000, Plaintiff could have resumed all of her past relevant work at step four of the sequential evaluation. (*Id.* at 12-28). Plaintiff then sought review from the Appeals Counsel (*id.* at 8-11 & 170-71) and on May 5, 2017, the Appeals Counsel concluded that there were no grounds for review (*id.* at 1-5).

Plaintiff filed the instant appeal on June 29, 2017. (D.E. No. 1). Plaintiff filed a brief in support of the instant appeal (D.E. No. 10, Plaintiff's Moving Brief ("Pl. Mov. Br.")), and Defendant filed an opposition brief (D.E. No. 11, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The case is ripe for determination.

## II.   LEGAL STANDARD

### A.   Standard of Awarding Benefits

To receive DIB under Title II, a plaintiff must show that she is disabled within the definition of the Act. *See* 42 U.S.C. § 423. In applying for DIB, claimants must also satisfy the insured status requirements enumerated in 42 U.S.C. § 423(c). Relevant here, "a claimant must show that [she] was insured under the program at the time of onset of his disability." *Kelley v. Barnhart*, 138 F. App'x 505, 507 (3d Cir. 2005).

Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The individual's physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Secretary of Health and Human Services has established a five-step sequential

evaluation process to determine whether a plaintiff is disabled.  *See* 20 C.F.R. § 416.920.  If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends.  20 C.F.R.  § 416.920(a)(4).  The burden rests on the plaintiff to prove steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1]  At step five, the burden shifts to the government.  *Id.*

*Step One*.  At step one, the plaintiff must demonstrate that she has not engaged in any substantial gainful activity since the onset date of her severe impairment.  20 C.F.R. § 416.920(a)(4)(i).  Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit.  20 C.F.R. §§ 416.972(a), (b).  If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience.  20 C.F.R. § 416.920(b).  If the plaintiff demonstrates she has not engaged in substantial gainful activity, the analysis proceeds to the second step.

*Step Two*.  At step two, the plaintiff must demonstrate that her medically determinable impairment or the combination of her impairments was "severe" as of the DLI.  20 C.F.R. § 416.920(a)(4)(ii).  A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities.  20 C.F.R. § 416.920(c).  Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold.  *See Leonardo v. Comm'r of Soc. Sec.*, No.  10-1498, 2010 WL 4747173, at *4 (D.N.J.  Nov. 16, 2010).

*Step Three*.  At step three, the ALJ must assess the medical evidence and determine whether as of the DLI, the plaintiff's impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See*

---

[1]        Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

20 C.F.R. § 416.920(a)(4)(iii).  The ALJ must "fully develop the record and explain his findings at step three."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000).

**Step Four**.  If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether, as of the DLI, the plaintiff had the residual functional capacity ("RFC") to perform her past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the plaintiff lacked the RFC to perform any work she had done in the past, the analysis proceeds.

**Step Five**.  In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on her age, education, work experience, and RFC.  20 C.F.R. § 416.920(a)(4)(v).  If the Commissioner finds that the claimant is capable of performing jobs that exist in significant numbers in the national economy, disability benefits will be denied.

**B.      Standard of Review**

The Court applies plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence."  *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision."  *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358,

360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III.    ALJ FARRELL'S DECISION

At step one of the analysis, ALJ Farrell determined that Plaintiff had last met the insured status requirement of the Social Security Act on December 31, 2000. (R. at 17). ALJ Farrell determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of May 2, 2000, through the DLI of December 31, 2000. (*Id.*).

At step two, ALJ Farrell concluded that through the DLI the Plaintiff had only the severe impairment of lumbar myalgia, because this impairment "had more than a minimal effect on her ability to perform basic work activities . . . ." (*Id.* at 17-18). ALJ Farrell concluded that Plaintiff's left knee and left shoulder osteoarthritis, fibromyalgia, ADHD, and dyslexia were not medically determinable impairments through December 31, 2000. (*Id.* at 18). ALJ Farrell reached this conclusion because "there are no objective medical findings in the record that actually diagnose

the claimant with fibromyalgia or . . . osteoarthritis" and that other medical records and evidence indicate that the conditions began after the DLI. (*Id.*). As to ADHD and dyslexia, ALJ Farrell concluded that Plaintiff did not raise the conditions as factors in her disability at the hearing and that the record contained no evidence of the conditions before the DLI. (*Id.*). ALJ Farrell also noted that medical reports from 2012 and 2013 indicate that Plaintiff was "noncompliant with referrals for psychiatric and phycological treatment." (*Id.*).

At step three, ALJ Farrell determined that, as of the DLI, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed by the regulations. (*Id.*). ALJ Farrell stated that through the DLI, "the record notes lumbar myalgia, and contains no lab findings or imaging to confirm any disc disease in the lower back" and that the record "does not document a disorder of the spine" that meets or is medically equal to Listing 1.04 of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.*).

Finally, at step four, ALJ Farrell provided a lengthy analysis giving careful consideration of the entire record, concluding that as of the DLI Plaintiff had the residual functional capacity to perform "light work" with the specific limitation that Plaintiff must avoid working around unprotected heights or moving mechanical parts. (*Id.* at 19-23). ALJ Farrell concluded that after careful considerations of the evidence, Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, but Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (*Id.* at 19).

ALJ Farrell then determined that as of the DLI, based on the record and the testimony of the vocational expert, Plaintiff was capable of performing past relevant work, such as a general office clerk, a food sales clerk, and a production planner. (*Id.* at 23-24). Accordingly, ALJ Farrell

found that Plaintiff had not been disabled as defined by the Act, "at any time from May 2, 2000, the alleged onset date, through December 31, 2000, the date last insured." (*Id.* at 24).

## IV.  DISCUSSION

Plaintiff asserts only one argument in support of her appeal: Plaintiff argues that ALJ Farrell erred when she failed to consult a medical expert to determine whether the onset date of the allegedly disabling impairments caused by her conditions (osteoarthritis, fibromyalgia, and "life-long conditions of ADHD and dyslexia"), occurred on or before December 31, 2000, the date her DIB insured status expired. (*See* Pl. Mov. Br. at 10-12).  She argues that, because these are slowly progressing conditions, ALJ Farrell's failure to consult an expert is contrary to Social Security Ruling ("SSR") 83–20, 1983 WL 31249 (S.S.A. 1983) and Social Security Administration Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-5-34(A)(2), 1994 WL 637370. (*Id.* at 13-14).  Plaintiff avers that this error "literally affects every finding at every step of the sequential evaluation" and therefore, ALJ Farrell decision is not supported by substantial evidence. (*Id.* at 10 & 12).  The Court disagrees.

SSR 83–20 "recognizes that with slowly progressive impairments, including mental impairments, 'it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.'" *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993) (quoting SSR 83–20) (cited by *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001)).  The SSR accordingly provides:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the . . . ALJ should call on the services of a medical advisor when onset must be inferred.

SSR 83–20.

Plaintiff argues that "the Third Circuit has held that when the onset of a claimant's illness is not clear, the Commissioner should follow SSR 83–20 in order to determine the onset of an illness that may be slowly progressing." (Pl. Mov. Br. at 14 (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 548 (3d Cir. 2003); *Walton*, 243 F.3d at 709-710)).

Plaintiff, however, ignores that under *Walton*, *Newell*, and their progeny, SSR 83–20 generally only applies "where the record contain[s] no evidence to substantiate *or contradict* a claimant's subjective testimony as to pain and impairment." *Yots v. Comm'r of Soc. Sec.*, 704 F. App'x 95, 97 (3d Cir. 2017) (emphasis in original); *see also Newell*, 347 F.3d at 549 n.7 (explaining that "[i]n *Walton*, we held that the ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and adequate *medical records for the most relevant period were not available*"); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 618 (3d Cir. 2009) ("As the District Court noted, further decisions of our court have confirmed that *Walton's* directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and *where medical records are sparse or conflicting*."); *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 205 (3d Cir. 2008) ("[W]e have generally applied SSR 83–20 *only where medical evidence from the relevant period is unavailable*."); *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x. 104, 108 (3d Cir. 2007) (rejecting claim that medical advisor was necessary by distinguishing *Newell* and *Walton* on grounds that "the ALJ in this case had access to adequate medical records from the time period before the expiration of Jakubowski's insured status and these records did not support her alleged onset date").

Here, it was not necessary for ALJ Farrell to "infer" the onset date of Plaintiff's osteoarthritis and fibromyalgia,[2] because contemporaneous medical records are available, and these records do not support Plaintiff's claim that these conditions were disabling impairments prior to December 31, 2000. In fact, the objective medical evidence and lay evidence in the record largely *contradict* Plaintiff's claim that arthritis and fibromyalgia were disabling impairments prior to the DLI.

First, unlike *Newell* and *Walton*, medical records from the relevant period are available and do not substantiate Plaintiff's claim. ALJ Farrell noted that while records from the period discuss Plaintiff's lumbar myalgia and related treatments, these medical records make no mention of Plaintiff's knee and shoulder pain, and do not mention arthritis or fibromyalgia. (R. at 18). For example, Dr. Rose's records from the time indicate that on March 25, 2000, shortly before her alleged disability onset, Plaintiff indicated to Dr. Rose that she had a back adjustment the previous week and "fe[lt] good." (*Id.* at 21 & 247). On February 26, 2001, Plaintiff visited Dr. Rose again when she needed an adjustment for lower back pain (*id.* at 247), and on April 25, 2001, Plaintiff informed Dr. Rose that her "low back [was] better" (*id.* at 248). Finally, on June 20, 2001, Plaintiff informed the doctor that she had low back pain from lifting her 30 pound son and Dr. Rose assessed she had lumbar myalgia. (*Id.* at 248). ALJ Farrell, therefore, reasonably found that Plaintiff only

---

[2]     With respect to Plaintiff's alleged mental impairments, namely ADHD and dyslexia, ALJ Farrell found that while Plaintiff alleged these conditions in her Disability Report, she did not raise them as factors of her disability at the administrative hearing and that the record did not contain any evidence regarding the conditions on or before the DLI. (R. at 18). In fact, at the hearing Plaintiff indicated through counsel that Plaintiff was alleging "two conditions but mainly, it's arthritis." (*See* R. at 38). Plaintiff did not mention ADHD or dyslexia at all, nor does Plaintiff now point to any objective diagnosis of ADHD or dyslexia in the record. Moreover, Plaintiff does not argue that these conditions are slowly progressing conditions, and thus, SSR 83–20 does not apply. In any event, Plaintiff's brief labels these conditions as "life-long conditions." (*See* Pl. Br. at 12). Plaintiff does not even indicate that the conditions changed in the period after she left her last job in 1995, which suggests the conditions were not severe impairments on or before the DLI. Thus, it was not erroneous for ALJ Farrell to find that these conditions were not medically determinable impairments on or before the DLI, nor was it erroneous to conclude that Plaintiff could return to her past relevant work, since she had previously performed such jobs under the same conditions.

had the severe impairment of lumbar myalgia before the DLI. *See Jakubowski*, 215 F. App'x. at

108 ("By contrast with *Newell* and *Walton*, . . . the ALJ in this case had access to adequate medical

records from the time period before the expiration of Jakubowski's insured status and these records

did not support her alleged onset date.").

Plaintiff takes issue with these findings, arguing that ALJ Farrell did not dispute the fact

that Plaintiff had three knee surgeries between 1996 and 1997, and that Plaintiff testified that soon

after having her son she developed shoulder pain as a result of arthritis. (Pl. Opp. Br. at 18-19).

But ALJ Farrell explained that Plaintiff's claim is rebutted by the record because

> Dr. Rose's records from 1993 to 2001 . . . do not mention fibromyalgia or arthritis
> of the left knee or left shoulder [R. at 241-48]. Records from June 24, 2013 note
> that [Plaintiff] reported fibromyalgia and osteoarthritis since 2002 (notably, after
> the DLI of 12/31/00) and stated that her pain was severe "since 2002 and got
> progressively worse." [*id.* at 676]. On May 4, 2009, [Plaintiff] reported that her
> lower back pain, bilateral knee pain, neck pain, and bilateral shoulder pain began
> in 2001, after she stopped nursing her son [*id.* at 551]. [Plaintiff] did not have left
> rotator cuff surgery until 2006 [*id.* at 275] and did not have left total knee
> replacement until 2010 and right total knee replacement until 2015.

(R. at 18).

Additionally, other evidence tends to contradict Plaintiff's assertions. For instance, on

February 20, 2004, Dr. Curiba noted that X-rays of Plaintiff's right knee revealed moderate

degenerative changes, but Plaintiff did not have a right total knee replacement until July 2015. (R.

at 21 (citing *id.* at 258)). Then in April 14, 2004, Dr. Curiba stated that Plaintiff's X-rays of the

hands revealed possible *early* rheumatoid arthritis, but noted there was no serological evidence of

any immune system problems. (*Id.* (citing *id.* at 263-264)). Moreover, ALJ Farrell noted that in

the Function Report (*id.* at 203-10), Plaintiff made statements indicating that she lived an active

life before the conditions became severe impairments, including that she "used to drive [her] kids

to school. . . volunteer at school . . . used to play outside with my kids – used to ride bikes as a

family . . . ." (*Id.* at 20 n.1). ALJ Farrell concluded that since Plaintiff's daughter was born in 1995 and her son in 1999, then logically Plaintiff's children would be entering school after December 31, 2000, and thus, these activities would have occurred *after* the DLI. (*Id.* (noting that medical records indicate Plaintiff was riding a bicycle in 2010) (citing *id.* at 311)). ALJ Farrell concluded that Plaintiff's activate life during that period was "consistent with the medical records in evidence which demonstrate that her physical conditions were aggravated over time but after DLI."[3] (*Id.*). Thus, SSR 83–20 does not apply here. *See Yots*, 704 F. App'x at 97 ("*Newell* and *Walton* merely held that a medical adviser was required where the record contained no evidence to substantiate *or contradict* a claimant's subjective testimony as to pain and impairment.") (emphasis in original).

Plaintiff also relies on the HALLEX I-2-5-34(A)(2), 1994 WL 637370, to argue that ALJ Farrell was required to obtain a medical expert's opinion before reaching a decision. (Pl. Mov. Br. at 14). Plaintiff asserts that the ALJ may need to obtain an expert opinion when the medical evidence is conflicting or confusing, the ALJ questions the etiology of a disease or disease process, and where the onset of impairment is in question. (*Id.*). But as Defendant points out, whether an ALJ "[n]eeds an expert medical opinion regarding the onset of an impairment" is discretionary. (Def. Opp. Br. at 12 (citing HALLEX I-2-5-34 (A)(2), 1994 WL 637370)). And in any event, none of the outlined situations are present here because the medical evidence is not "conflicting or confusing," but rather, supports ALJ Farrell's conclusion that Plaintiff did not have the alleged

---

[3]     Plaintiff takes issue with ALJ Farrell's interpretation of this evidence. Plaintiff argues that ALJ Farrell did not seek any clarification from Plaintiff during the hearing. (Pl. Mov. Br. at 18 n.3). However, the hearing transcript shows that ALJ Farrell asked Plaintiff about the Function Report and Plaintiff stated that while she "was not sure when" she engaged in those activities, she did in fact engage in them, including driving her kids to school and being a class mom. (R. at 63-64). Plaintiff suggests that ALJ Farrell's interpretation is erroneous because the Function Report does not provide any dates for those activities, but "[w]here evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *See Izzo*, 186 F. App'x at 283; *see also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (noting that the Court must be mindful that it should "not weigh the evidence or substitute [its own] conclusions for those of the fact finder").

severe impairments before the DLI.

In short, ALJ Farrell's determination is supported by substantial evidence and consequently, this case is far from the "veritable poster-child situation for invoking SSR 83–20," as Plaintiff suggests. (*See* Pl. Mov. Br. at 16). While arthritis and fibromyalgia are slowly progressing conditions, the evidence contradicts Plaintiff's claims and establishes that these conditions were not medically determinable impairments *before* the DLI. "Under these circumstances, the ALJ was not required to obtain the assistance of a medical advisor to help him infer the onset date." *See Kelley v. Barnhart*, 138 F. App'x 505, 509 (3d Cir. 2005); s*ee also Cordeiro v. Astrue*, No. 09-0388, 2012 WL 2048279, at *10 (D. Del. June 6, 2012) ("[T]he Third Circuit requires medical expert witnesses only where medical evidence from the disputed period is entirely lacking. It has also refused to require medical expert witnesses where the medical evidence available supported ALJ Farrell's conclusion regarding the onset date.").

## IV.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner of Social Security. An appropriate Order accompanies this Opinion.


<u>s/Esther Salas</u>
**Esther Salas, U.S.D.J.**